# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Advanced Logistics Consulting, Inc.,

                              Plaintiff,

                                                Civ. No. 09-720 (RHK/JJG)
                                                **MEMORANDUM OPINION
                                                AND ORDER**

v.

C. Enyeart LLC, *et al.*,

                              Defendants.

Josh Jacobson, The Law Office of Josh Jacobson, P.A., Minneapolis, Minnesota, for Plaintiff.

Jennifer L. Gokenbach, Scott R. Bauer, Moye White LLP, Denver, Colorado, Kevin D. Hofman, Benjamin J. Rolf, Halleland Lewis Nilan & Johnson, P.A., Minneapolis, Minnesota, for Defendant.

## INTRODUCTION

Plaintiff Advanced Logistics Consulting, Inc. ("ALC"), a Minnesota-based technical consulting company, has sued several of its former independent contractors, all of whom reside in Colorado, alleging various contract and tort claims. Defendants now move to dismiss for improper venue or, in the alternative, to transfer this action to the United States District Court for the District of Colorado. For the reasons set forth below, the Court will deny the Motion.

## BACKGROUND

ALC is a Minnesota corporation with its principal place of business in Woodbury, Minnesota. (Compl. ¶ 2.) It is an "Oracle Certified Specialty and Training Partner" that provides "both application and technical consulting to corporations both domestically and abroad." (Id. ¶ 16.) It offers its services through "a number of independent technical and functional consultants, all of whom work as independent contractors." (Id. ¶ 19.) ALC's lone employee is its owner, Kenneth Tice. (Tice Aff. ¶ 5.)

Defendants Chris Enyeart, Dave DesCombes, and Kirk Anderson are Colorado residents who previously performed consulting services for ALC. They did so through their own businesses, namely, Defendants C. Enyeart, LLC, Dave DesCombes, Inc., and KMA Consulting, Inc., respectively. (Compl. ¶¶ 21, 23, 26; First Enyeart Decl. ¶¶ 5, 15; First DesCombes Decl. ¶¶ 5, 15; First Anderson Decl. ¶¶ 5, 15.)

In March 2006, ALC entered into an agreement to provide consulting services to Mary Kay Inc. ("Mary Kay"), a Delaware corporation with its principal place of business in Addison, Texas. (Compl. ¶ 24; Voss Decl. ¶ 3.) ALC then arranged to provide those services through Defendants. (Compl. ¶ 26.) The agreements between ALC and Defendants regarding their work for Mary Kay were not memorialized in formal written contracts – the terms of Enyeart's agreement was set forth in an email exchange, while the terms of DesCombes's and Anderson's agreements were agreed to verbally. The essence of the three agreements, however, was the same: Defendants would be paid on an hourly basis for their work, with all of their expenses reimbursed by ALC. (First

2

Enyeart Decl. ¶¶ 6, 8 & Ex. A; First DesCombes Decl. ¶¶ 6, 8; First Anderson Decl. ¶¶ 6, 8.)

Pursuant to these agreements, Defendants provided technical services to Mary Kay through ALC for more than two years. They did so from their homes in Colorado, Oracle's Colorado offices, or Mary Kay's headquarters in Texas.[1] They submitted invoices to ALC on a weekly basis, containing the hours that they had worked the previous week. At least some of those invoices apparently have not been paid. (First Enyeart Decl. ¶¶ 10, 13, 17; First DesCombes Decl. ¶¶ 11, 14, 18; First Anderson Decl. ¶¶ 11, 14, 19 & Ex. 1.)

On February 28, 2009, Defendants emailed Tice – within twenty minutes of one another – and terminated their relationships with ALC. (Compl. ¶ 28; Tice Aff. Exs. A-C.) According to the Complaint, Defendants did so because they had solicited Mary Kay as a client and had formed their own competing business relationships with the company. (Compl. ¶ 29.) ALC then commenced the instant action, asserting three claims against Defendants: breach of common-law duty of loyalty (Count I); breach of contract (Count II); and tortious interference (Count III).

Defendants now move to dismiss this action for improper venue or, in the alternative, to transfer it to the United States District Court for the District of Colorado.

---

[1] DesCombes and Anderson also performed some work from China and Mexico. (First DesCombes Decl. ¶ 11; First Anderson Decl. ¶ 11.)

**STANDARD OF REVIEW**

Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(3) and transfer under 28 U.S.C. § 1404(a). Accordingly, the Court sets forth below the standard for evaluating each (alternative) request.

Venue in the district courts is governed by 28 U.S.C. § 1391. Under Section 1391(a)(2), venue in diversity cases is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." When a defendant seeks dismissal for improper venue under Rule 12(b)(3), therefore, it bears the burden of demonstrating that the plaintiff's chosen venue lacks a sufficient connection to the parties' dispute. United States v. Orshek, 164 F.2d 741, 742 (8th Cir. 1947).[2] To discharge that burden, the defendant must submit affidavits or other evidence defeating venue in the chosen forum. Freeman v. Fallin, 254 F. Supp. 2d 52, 56 (D.D.C. 2003); 5B Wright, Miller & Cooper, Federal Practice & Procedure: Civil 3d § 1352 at 320 (3rd ed. 2004). Accordingly, unlike motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court may consider matters beyond the pleadings when ruling on a motion to dismiss for improper venue. See, e.g., Doe 1 v. AOL LLC, 552 F.3d 1077, 1081 (9th Cir. 2009); Sucampo Pharms., Inc. v. Astellas Pharma, Inc., 471 F.3d 544, 550 (4th Cir. 2006); Pierce v. Shorty Small's of Branson Inc., 137 F.3d 1190, 1192 (10th Cir. 1998); Home Ins. Co. v. Thomas Indus., Inc., 896 F.2d 1352, 1355 (11th Cir. 1990).

---

[2] There is a circuit split regarding who bears the burden of establishing the propriety (or lack thereof) of the chosen venue. Compare, e.g., Orshek and Myers v. Am. Dental Ass'n, 695 F.2d 716, 724-25 (3rd Cir. 1982) (defendant's burden) with Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353 (2d Cir. 2005) (plaintiff's burden). Orhsek, however, is controlling here.

As for the alternative request to transfer, 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." There is no precise mathematical formula to be employed when balancing the relevant factors. As one court of appeals has noted, "'[w]eighing' and 'balancing' are words embodying metaphors which, if one is not careful, tend to induce a fatuous belief that some sort of scales or weighing machinery is available. Of course it is not. At best, the judge must guess, and we should accept his guess unless it is too wild." Ford Motor Co. v. Ryan, 182 F.2d 329, 331-32 (2d Cir. 1950). Hence, a district court enjoys "broad discretion" when deciding whether to grant a motion to transfer. E.g., Heller Fin., Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1293 (7th Cir. 1989).

Courts must be cognizant, however, that transfer motions "should not be freely granted." In re Nine Mile Ltd., 692 F.2d 56, 61 (8th Cir. 1982), abrogated on other grounds by Mo. Hous. Dev. Comm'n v. Brice, 919 F.2d 1306 (8th Cir. 1990). A "heavy" burden rests with the movant to demonstrate why a motion to transfer venue should be granted. E.g., Integrated Molding Concepts, Inc. v. Stopol Auctions, L.L.C., Civ. No. 06-5015, 2007 WL 2263927, at *5 (D. Minn. Aug. 6, 2007) (Schiltz, J., adopting Report & Recommendation of Erickson, M.J.); Radisson Hotels Int'l, Inc. v. Westin Hotel Co., 931 F. Supp. 638, 641 (D. Minn. 1996) (Kyle, J.). To satisfy that "heavy" burden, the movant must demonstrate that the relevant factors weigh "strongly" in its favor. Id.

**ANALYSIS**

**I.  Improper venue**

Defendants first argue that venue is improper in Minnesota because the relevant events underlying ALC's claims occurred in Colorado and Texas. In particular, they rely on the fact that (1) all of the services they rendered to Mary Kay and (2) any so-called "solicitation" of Mary Kay took place in those states and not Minnesota. (Def. Mem. at 4-5; Reply at 6-7.)[3] Under the former version of the venue statute, Defendants' argument might have gained traction. Prior to 1990, the statute laid venue in diversity cases in the district "in which the claim arose." See Setco Enters. Corp. v. Robbins, 19 F.3d 1278, 1281 (8th Cir. 1994) (discussing prior version of 28 U.S.C. § 1391(a)). Hence, courts focused on the "weight of the contacts" in determining which district had the greatest connection with an action, and venue was proper *only* in that district. Id.

In 1990, however, Congress amended the venue statute by replacing the phrase "in which the claim arose" with the phrase "in which a substantial part of the events or omissions giving rise to the claim occurred." See Judicial Improvements Act of 1990, Pub. L. No. 101-650, § 311(1), 104 Stat. 5089, 5114 (1990). Congress made this change "in order to broaden the venue provisions," First of Mich. Corp. v. Bramlet, 141 F.3d 260, 263 (6th Cir. 1998), and thereby "expand the number of venues available to a plaintiff," Winnebago Tribe of Neb. v. Babbitt, 915 F. Supp. 157, 166 (D.S.D. 1996). As a result of these amendments, it is now clear that the venue statute "does not posit a single

---

[3] ALC responds by arguing, *inter alia*, that the corporate Defendants have waived any objection to improper venue. Because the Court determines that venue here is appropriate, it need not consider this argument.

appropriate district for venue; venue may be proper in any of a number of districts, provided only that a substantial part of the events giving rise to the claim occurred there." Woodke v. Dahm, 70 F.3d 983, 985 (8th Cir. 1995). Put another way, when determining whether dismissal is proper, the Court need not decide that it is the "best" venue or the one having the most significant connection to the claims at issue. E.g., Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 563 (8th Cir. 2003); Kelly v. Qualitest Pharms., Inc., No. CIV-F-06-116, 2006 WL 2536627, at *8 (E.D. Cal. Aug. 31, 2006) ("[I]t is not necessary that a majority of the events occurred in the district where suit is filed, that the events in that district predominate, or that the chosen district is the 'best venue.'"). All that matters is that "significant events or omissions material to the plaintiff's claim . . . occurred in the district in question." Id. (internal quotation marks and citation omitted).

The foregoing makes clear that venue is proper in this district. While Defendants are correct that the Court must focus on their activities, and not ALC's, in determining whether a substantial part of the events in question occurred here, Woodke, 70 F.3d at 985, this is not simply a formulaic exercise. Rather, the Court must consider "all [of] the events giving rise to" ALC's claims in deciding whether Minnesota has a substantial connection to those claims. Winnebago Tribe, 915 F. Supp. at 166; accord, e.g., Mitrano v. Hawes, 377 F.3d 402, 405 (4th Cir. 2004) ("[A] court should not focus only on those matters that are in dispute or that directly led to the filing of the action. Rather, it should review the entire sequence of events underlying the claim.") (internal quotation marks and citation omitted). The Complaint alleges that Defendants entered into agreements

with ALC, a Minnesota company, to perform consulting services for Mary Kay. The Complaint further alleges that Defendants breached those agreements, and committed tortious interference, when they solicited Mary Kay's business while still performing services for ALC. Defendants' contractual relationships with ALC, therefore, form a necessary predicate for all of ALC's claims. In light of the importance of those relationships to ALC's lawsuit, and the fact that ALC is a Minnesota company, the Court concludes that Minnesota has a substantial connection to ALC's claims.

Setco is analogous. There, creditors had filed an involuntary bankruptcy petition against the defendants. 19 F.3d at 1279. The bankruptcy trustee later filed a complaint against the defendants in the Bankruptcy Court for the Western District of Missouri, which issued an injunction enjoining the defendants from transferring their property. In violation of the injunction, the defendants transferred their interest in a hotel to Setco. The negotiations leading up to the hotel transfer, as well as its execution, took place in Texas and Oklahoma. Id. at 1280.

When Setco learned of the injunction, it commenced an action against the defendants in the Western District of Missouri, alleging claims for fraudulent inducement and fraudulent transfer of property. The defendants moved to dismiss, arguing that venue was improper. The district court denied the motion, and the Eighth Circuit affirmed. Despite the fact that none of the defendants' fraudulent acts took place in the Western District, the appellate court reasoned that venue was proper because Setco's fraud claims

8

were based on the defendants' violation of an order (the Bankruptcy Court's injunction) issuing out of the Western District. Id. at 1281.

The same result should obtain here. As in Setco, it is not dispositive that the specific acts giving rise to ALC's claims did not occur in this district. What matters is that there is a substantial connection between this district and ALC's claims, because those claims would not exist absent Defendants' relationships with ALC, a Minnesota company. That is sufficient to establish venue. Id. at 1281.

A look at the purposes behind the venue statute bolsters the Court's conclusion. "One of the central purposes of statutory venue is to ensure that a defendant is not 'haled into a remote district, having no real relationship to the dispute.'" Richards v. Aramark Servs., Inc., 108 F.3d 925, 928 (8th Cir. 1997) (quoting Woodke, 70 F.3d at 985). Under the facts here, Defendants could have (and should have) anticipated that they might be sued in Minnesota for breach of contract, or related claims, when they contracted with a Minnesota-based company. Indeed, although Defendants have not yet answered the Complaint, the Court strongly suspects that they intend to file counterclaims against ALC for their unpaid invoices. (See Anderson Decl. Ex. 1.) Certainly, if they had won the "race to the courthouse" and filed their claims against ALC first, those claims would have been properly venued in Minnesota. It should make no difference that ALC struck first by filing the opening salvo in the parties' dispute.

At bottom, the Court cannot say that the District of Minnesota is a "remote district" lacking any "real relationship to th[is] dispute." Richards, 108 F.3d at 928. Accordingly, Defendants have failed to show that venue in this District is improper.

II. **Transfer of venue**

As set forth above, the Court focuses on three primary factors when deciding whether to transfer venue: the convenience of the parties, the convenience of the witnesses, and the interests of justice. See 28 U.S.C. § 1404(a); Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 691 (8th Cir. 1997). Having considered those factors here, the Court concludes that transfer is unwarranted.[4]

Regarding the convenience of the parties, suffice it to say that the District of Minnesota – ALC's home forum – would be most convenient for ALC, while the District of Colorado – Defendants' home forum – would be most convenient for Defendants. Section 1404(a), however, provides for transfer to a *more* convenient forum, not one that is equally convenient (or inconvenient) to the forum originally selected. See Prod. Fabricators, Inc. v. CIT Commc'ns Fin. Corp., Civ. No. 06-537, 2006 WL 2085413, at *5 (D. Minn. July 25, 2006) (Kyle, J.). Transfer should not be granted "if the effect is simply to shift the inconvenience" from one party to the other. Graff v. Qwest Commc'ns Corp., 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999) (Doty, J.).[5]

---

[4] Under Section 1404(a), a court faced with a motion to transfer must first determine whether the action "might have been brought" in the proposed transferee district. There is no dispute that this action might have been brought in the District of Colorado.

[5] The Court accords little weight to the fact that ALC has some clients located in Colorado, especially since it provides its services through independent contractors. (Tice Aff.

Nor have Defendants shown that the convenience-of-witnesses factor favors transfer. In analyzing this factor, the Court focuses on the inconvenience caused to *non-party* witnesses, because "it is generally assumed that witnesses within the control of the party calling them, such as employees, will appear voluntarily in a foreign forum." FUL Inc. v. Unified Sch. Dist. No. 204, 839 F. Supp. 1307, 1311 (N.D. Ill. 1993); accord Continental Airlines, Inc. v. Am. Airlines, Inc., 805 F. Supp. 1392, 1397 (S.D. Tex. 1992). Here, Defendants concede that the relevant non-party witnesses are located in Texas, not Colorado. (See Second Enyeart Decl. ¶ 14 ("I believe the key non-party witnesses are Doug Voss, Vice-President of Mary Kay[,] and Denise Sadberry, Account Manager with The InSource Group, Inc., both of whom are located in Texas.").) All such witnesses are beyond the subpoena power of either this Court or the District of Colorado. Moreover, Defendants have failed to specify the topics about which the non-party witnesses purportedly will testify. See Enterprise Rent-A-Car Co. v. U-Haul Int'l, Inc., 327 F. Supp. 2d 1032, 1046 (E.D. Mo. 2004) (party seeking transfer must "specify clearly the key witnesses to be called *and indicate what their testimony will entail*") (emphasis added); see also Reid-Walen v. Hansen, 933 F.2d 1390, 1396 (8th Cir. 1991) (analyzing related doctrine of *forum non conveniens*; "[T]he district court must examine the materiality and importance of the anticipated witnesses' testimony and then determine

---

¶ 10.) Moreover, the fact that Tice (ALC's lone employee) may have occasionally traveled to Colorado for ALC business does not alter the convenience balance any more than DesCombes's admission that he occasionally travels to Minnesota to visit family. (First DesCombes Decl. ¶ 16.)

their accessibility and convenience to the forum. The burden is on the defendant to provide these facts by way of affidavit or other information.").

Furthermore, travel to either Colorado or Minnesota will be disruptive for Texas-based witnesses. Cf. Surfer Internet Broad. of Miss., LLC v. XM Satellite Radio Inc., No. 4:07CV034, 2008 WL 1868426, at *2 (N.D. Miss. Apr. 24, 2008) (Southern District of New York more convenient than Northern District of Mississippi for witnesses located in New York, Pennsylvania, and Washington, D.C.). While Defendants correctly note that Colorado is closer to Texas than Minnesota (Reply at 9), the difference is *de minimis* – 641 miles versus 852 miles – when one assumes that the witnesses likely will be traveling by air. See Mohamed v. Mazda Motor Corp., 90 F. Supp. 2d 757, 776 (E.D. Tex. 2000) (travel difference of 150 miles insufficient to warrant transfer). In this era of tight airport security, weather delays, scheduling problems, and the like, it is highly unlikely that travel from Texas to Colorado would be appreciably shorter than travel from Texas to Minnesota.[6]

Finally, the interests of justice do not favor transfer. When analyzing this factor, courts consider, among other things, judicial economy, the plaintiff's choice of forum, docket congestion, each party's ability to enforce a judgment, obstacles to a fair trial, conflict-of-law issues, and each court's relative familiarity with the applicable law. E.g.,

---

[6] In addition to the Texas-based witnesses, Defendants point to several Colorado-based Oracle employees who purportedly have knowledge of Defendants' software testing for Mary Kay. (See Def. Mem. at 9.) But Defendants have nowhere explained what information these witnesses possess *relevant to the claims in this case*, which concern Defendants' solicitation of Mary Kay while under contract with ALC.

12

Terra Int'l, 119 F.3d at 696; Prod. Fabricators, 2006 WL 2085413, at *3. Many of these items are irrelevant in the present case. However, ALC's choice of a Minnesota forum is an "important" consideration, Multi-Tech Sys., Inc. v. Net2Phone, Inc., Civ. No. 00-346, 2000 WL 34494824, at *7 (D. Minn. June 26, 2000) (Montgomery, J.), particularly since it is a Minnesota company, see Warner v. Purina Mills, Inc., No. C98-4067, 1999 WL 33656963, at *6 (N.D. Iowa Feb. 15, 1999) ("[P]laintiff's selection is entitled to greater deference when [it] chooses [its] home forum.") (citations omitted).

Defendants argue that familiarity with the applicable law favors transfer to Colorado because there is "little doubt that Colorado law should apply" to ALC's claims (Reply at 14), but that is not altogether clear to the Court. In the Complaint, a Minnesota-based company has alleged common-law claims against Colorado-based defendants regarding their solicitation of a Texas-based client of the plaintiff. Perhaps Defendants' counsel are more attuned than the Court to the subtle nuances of choice of law, but in the Court's view the issue appears far more complicated than Defendants suggest. In any event, even if Defendants were correct that Colorado law applies, the scales would tip very little (if at all) in favor of transfer because federal courts often are called upon to apply the law of other states. See, e.g., Clergy Fin., LLC v. Clergy Fin. Servs., Inc., 598 F. Supp. 2d 989, 995 (D. Minn. 2009) (Davis, J.) (fact that Minnesota court might have to apply Colorado law did not impact interest-of-justice factor; "[C]ourts can . . . apply the law of another state as easily as their own."). And Defendants concede that where the legal questions involved are "relatively simple" – and no party has suggested otherwise

here – the familiarity-with-applicable-law factor "is afforded little weight." (Reply at 13 n.6.)

Defendants further argue that public policy favors transferring this case to Colorado, because that state has a significant interest in protecting its residents "against unfair restrictions on earning their livelihoods," which is "a forefront issue with" ALC's claims. (Reply at 13.) Whatever interest Colorado might have in this case, however, is counterbalanced by Minnesota's own interest in providing a local forum for the claims of a Minnesota company – here, ALC. See, e.g., Johnson v. Welsh Equip., Inc., 518 F. Supp. 2d 1080, 1093 (D. Minn. 2007) (Davis, J.) ("Minnesota has an interest in providing a forum for an injured resident.").

Finally, Defendants argue that "the relative financial strength of the parties to absorb the costs of litigation" favors transfer to Colorado. (Reply at 11.) Defendants point out that they are individuals (or the sole-proprietorships owned by them), but they overlook that ALC also is a small, one-employee company. (Tice Aff. ¶ 5.) Moreover, Defendants have proffered no evidence about their financial strength (or lack thereof), save their bald assertions that litigating in Minnesota "will likely create a financial hardship." (E.g., Second Enyeart Decl. ¶ 16.)[7] That is simply not enough. There is

---

[7] The Declarations of DesCombes and Anderson contain identical (bald) assertions. (See Second DesCombes Decl. ¶ 10; Second Anderson Decl. ¶ 10.)

nothing before the Court to indicate that it would be any less burdensome for ALC to litigate in Colorado than it would be for Defendants to litigate in Minnesota.[8]

As this Court has previously noted, "[i]n many cases involving a proposed change of venue, there are factors [that] support each side. That is true here. There will be some inconvenience to someone no matter where this action is prosecuted." LeMond Cycling, Inc. v. Trek Bicycle Corp., Civ. No. 08-1010, 2008 WL 2247084, at *4 (D. Minn. May 29, 2008) (Kyle, J.) (citation omitted). Here, Defendants have failed to satisfy their "heavy" burden of demonstrating that the District of Colorado is a more convenient forum for the instant case than the District of Minnesota.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Defendants' Motion to Dismiss or Transfer Venue (Doc. No. 3) is **DENIED**.

Dated: June 16, 2009                         s/Richard H. Kyle
                                                                   RICHARD H. KYLE
                                                                   United States District Judge

---

[8] The Court is somewhat dubious of Defendants' claimed financial hardship. Notably, Defendants are represented by four attorneys employed by two separate law firms, Halleland Lewis Nilan & Johnson, P.A., and Moye White LLP. Halleland Lewis is a large Minnesota law firm, and Moye White is the 12th-largest law firm in Colorado (as of October 1, 2008). See http://lawweekonline.com/clients/lawweekonline/BiggestFirms20081002.pdf (last visited June 16, 2009). In the Court's experience, lawyers like these don't come cheap.